Case 4:24-cv-03020   Document 46   Filed on 04/24/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
April 24, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIANA PATRICIA VALENCIA GAMBOA., *Plaintiff*, | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:24-CV-3020 |
| YASMIN ELENA WILLIAMS, *Defendants*. | § § § § | |

## OPINION

Before the Court is Petitioner Diana Patricia Valencia Gamboa's ("Petitioner") Motion for Attorney's Fees under the Hague Convention and ICARA. (Doc. No. 45). Respondent Yasmin Elena Williams ("Respondent") did not respond to the request for attorney's fees and costs but did file a Letter describing her financial situation. (Doc. No. 41). After considering the relevant law and statutory guidelines Court hereby **GRANTS** the request for fees and costs. (Doc. No. 45).

### I. History

*Factual Background*

This case concerns the custody of a fourteen-year-old boy, ESCV. Petitioner is ESCV's mother, a Colombian citizen. In August 2023, ESCV's soccer club in Cali, Colombia was invited to play in an international tournament in Orlando, Florida the following January. (Doc. No. 1, Ex. C). On December 15, 2023, ESCV travelled from his home in Cali, Colombia to Houston, Texas for the purpose of spending Christmas with Respondent Yasmin Elena Williams, his paternal grandmother, before he continued to Orlando to play in the tournament. (Doc. No. 1 at 3). He was to return to Colombia on January 10, 2024. (*Id.*).

Despite the purpose of the trip being to play in the tournament, ESCV never made it to Orlando, and he never boarded his flight home to Colombia on January 10, 2024. (*Id.*). Instead, he

remained in Texas with Respondent. After ESCV did not board his return flight, Petitioner learned that Respondent intended to keep ESCV with her in Cypress, Texas. (Doc. No. 34 at 2). ESCV had been invited to a soccer academy hosted by the Houston Dynamo, but Petitioner did not provide her consent for ESCV to attend. Further, Petitioner assuredly never consented to ESCV remaining with Respondent in Texas permanently. Nevertheless, Respondent determined that it was in ESCV's best interest to remain in Texas and attend the soccer program, so she did not let ESCV return to Colombia. (Doc. No. 17 at 2). Respondent is Colombian but is a legal permanent resident of the United States. ESCV is also Colombia but had no legal status to remain in the United States after the expiration of his visa in early June.

*Procedural Facts*

Prior to these events, Petitioner had custody of ESCV. The father of the child, Respondent's son, never legally married Petitioner and provided little to no financial support. Despite the fact that Respondent did provide some financial support to ESCV, under Colombian and/or United States custody laws, Respondent has never had any legal rights to custody of ESCV. This fact was confirmed in February 2024, when Petitioner instituted a proceeding with the Colombian Institute of Family Welfare ("CIFW"). (Doc. No. 34 at 2). During this proceeding, both Respondent and Petitioner were represented by counsel in Colombia. (*Id.*). As a result, the CIFW ordered Respondent to return ESCV to Colombia and issued a document reaffirming Petitioner's parental rights to ESCV. (*Id.*). Respondent refused to comply with this order.

On August 13, 2024, the Verified Petition was filed in this Court. Petitioner filed this lawsuit under the Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq ("ICARA"). In addition to Petitioner's Verified Petition, she also filed an Emergency Motion for the Immediate Issuance of Return Order. (Doc. No. 16). In response to the

2

Verified Petition and Emergency Motion, Respondent argued that two exceptions apply that would relieve her of the legal duty to return the child to his mother. Specifically, she argued that ESCV has reached the age and maturity necessary to have his opinion considered, and that returning him to Colombia would present a grave risk of an intolerable situation. (Doc. No. 22 at 4).[1]

The Court held an evidentiary hearing in which Petitioner, Respondent, and ESCV were all present. Petitioner and Respondent testified, presented witnesses and cross-examined the opposing sides' witnesses. After the hearing, the Court granted the Verified Petition and ordered that E.S.C.V. be returned to his mother's care in Colombia. (Doc. No. 40). Petitioner then moved for fees, costs, and expenses. (Doc. No. 45).

## II. Legal Standard

The Hague Convention's overall goal is to "address the problem of international child abductions during domestic disputes." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014) (internal quotation marks omitted). The Hague Convention achieves its goal by "establish[ing] legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." 22 U.S.C.A. § 9001. A wrongful removal is one that violates "rights of custody." *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The Hague Convention reasons that the best interest of the child is well served when decisions regarding custody rights are made in the country of habitual residence.

The Hague Convention's central goal is the return of the children. It provides that when children under the age of 16 have been wrongfully removed or retained, "the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply." *Abbott*, 560 U.S. at 9 (internal quotation marks omitted).

---

[1] As Respondent is representing herself *pro se* and presenting her case in a language other than her native language, the Court construed and continues to construe her arguments liberally.

3

With respect to the award of attorney's fees and costs, ICARA provides, in pertinent part, as follows:

> Any Court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such an award would be clearly inappropriate.

42 U.S.C. § 11607(b)(3). An award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and (2) "to deter such removal or retention." HAGUE INTERNATIONAL CHILD ABDUCTION CONVENTION; *Text and Legal Analysis*, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986).

The determination of a reasonable attorney's fee is a matter of discretion with the Court. *Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014). In determining the amount of reasonable attorney's fees to award under ICARA, federal courts typically apply the lodestar method. *See Id.* at 523. The calculation of fees under the lodestar method is a two-step process. The Court first calculates the lodestar amount by multiplying the reasonable number of hours expended on the case by the reasonable hourly rate. In the second step, the Court considers whether to adjust the lodestar amount based upon the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). There is a strong presumption that the lodestar amount is reasonable. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

The *Johnson* factors are important for the Court's consideration, but no factor is dispositive. *Montgomery v. State Farm Lloyds*, No. 23-11126, 2024 WL 2369415, at *1 (5th Cir. May 23, 2024). The reasonableness of attorney's fees is considered in light of the following guidelines: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

### III. Analysis

As to step one, the Court first determines a reasonable hourly rate for the attorney's work. Reasonable hourly rates are typically calculated through affidavits by attorneys practicing in the community in which the district court is located. *Tollett v. City of Kemah, Tex.*, 285 F.3d 357, 368 (5th Cir. 2002). "In calculating the lodestar, '[t]he court should exclude all time that is excessive, duplicative, or inadequately documented.'" *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 392 (5th Cir. 2016). Petitioner seeks $54,112.59 in attorney's fees. (Doc. No. 32-4 at 1). This reflects a lodestar calculation of 155.75 hours at $347.43 per hour. (Doc. No. 32-2).

Next, the Court must determine whether the hours claimed were "reasonably expended" on the litigation. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995) (per curiam). The fee applicant (in this case, Petitioner) bears the burden of establishing the reasonableness of the number of hours expended on the litigation and must present adequately documented time records to the court. *See Homer v. Homer*, No. Civ. A. 4:21-CV-02789, 2022 WL 4290465 at *5 (S.D. Tex. 2022). Parties submitting fee requests are also required to exercise "billing judgment," which "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. United States HUD*, 99 F.3d 761, 769 (5th Cir. 1996).

Notably, the fee shifting provision in ICARA requires Respondent Williams to pay expenses either incurred by Ms. Valencia or "on [her] behalf." 22 U.S.C. § 9007(b)(3). That permits Ms. Valencia to recover the expenses she paid for directly and also permits her attorneys

5

to recover fees and expenses they incurred providing legal services to Ms. Valencia. *See, e.g., Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) ("The fact that Cuellar's lawyers provided their services pro bono does not make a fee award inappropriate."); *Salazar*, 750 F.3d at 520 (citing Cuellar approvingly). Awarding fees and costs to pro bono counsel encourages pro bono representations which helps ensure "that the Convention not go unenforced merely because a parent whose child is abducted lacks the resources to pay for counsel." *Cuellar*, 603 F.3d at 1143.

Counsel for Petitioner provided evidence that she worked 224.9 hours, billed at Counsel's standard billing rate of $375 per hour. (Doc. No. 45-1 at 2). To support Counsel's rate, she attaches her CV, affidavits from herself and co-counsel, and numerous billing and expense records. (Doc. No. 45-3; 45-4; 45-5). Counsel's records show that approximately 4.4 hours were billed to an assistant at $90 per hour, and 15 hours were billed to an assistant at $110 per hour. (*Id.*). This reflects a total of 244.3 hours billed, which amounts to $86,679.00. (Doc. No. 45 at 6). Nevertheless, Plaintiff's Counsel has voluntarily reduced the hours she seeks to recover down to 193.55—including work done by both Plaintiff's Counsel and her assistants—totaling $67,647.75. (*Id.*). Conducting a comprehensive review of the evidence of attorney's fees submitted, the Court finds that there is evidence of billing judgment exercised by Petitioner's attorneys. As such, the Court finds the hours claimed were reasonably expended and no reduction of the hours sought is warranted in this instance. Accordingly, the lodestar is calculated at $67,647.75.

The second step requires the Court consider whether to adjust the lodestar amount based upon the twelve *Johnson* factors. The Fifth Circuit has reasoned that "the most critical factor in the analysis is the 'degree of success obtained.'" *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). Additionally, some of the factors are often included in the initial lodestar calculation; thus, the Court does not reconsider factors that were already considered during the initial lodestar calculation when deciding whether to adjust the lodestar. *See id.*

Petitioner's counsel attached a detailed billing record documenting the hours the attorneys worked, and each service performed. (Doc. No. 45-2). She also attached the affidavit of Jay Brown, an attorney at the firm Petitioner engaged for representation, supporting the reasonableness of Petitioner's counsel's fee and hourly billing rate for the legal representation and supporting the *Johnson* factors. (Doc. No. 45-5). The Court has carefully considered each of the *Johnson* factors as applied to this case and determines that they are accurately reflected in the lodestar. The Court again notes that the attorneys involved exercised billing judgment and were faced with a case involving an expedited nature. Petitioner also obtained the relief she sought, that is, ESCV's return to Colombia. Therefore, having considered the strong presumption of the reasonableness of the lodestar, the Court concludes that no adjustment to the lodestar is necessary.

The ICARA permits the recovery of "court costs" and other "necessary expenses . . . related to the return of the child." 22 U.S.C. § 9007(b)(3). These costs are defined to include (1) clerk fees, (2) transcript fees, (3) printing fees, (4) copying costs, (5) docketing fees, and (6) certain expert and interpreter fees. *See* 28 U.S.C. § 1920. Plaintiff's Counsel requests $5,835.71 in expenses and court fees. (Doc. No. 45 at 7–8). Specifically, Petitioner seeks reimbursement for meals, service and interpreter fees, trial and hotel expenses, and flights to and from Colombia. (*Id.* at 9). Counsel included a detailed accounting of the costs and expenses associated with the several proceedings and travel expenses as exhibits to the motion. (Doc. No. 45-2 at 1). The Court has reviewed the supporting documentation for each of these costs and finds these expenses to be reasonable and necessary to Petitioner's efforts to have ESCV returned to Colombia under the Hague Convention.

Counsel argues that these fees and expenses are not "clearly inappropriate" because Petitioner's yearly income is approximately $6,000 a year, while Respondent's self-reported yearly income is approximately $45,000 a year. (Doc. No. 45-6 at 17). Respondent did not respond to

7

Plaintiff's request for fees and costs, but did previously file a Letter addressing her financial concerns. (Doc. No. 41). In her Letter, Respondent declared herself "insolvent in order to meet the payments stemming from this process." (*Id.* at 1). Further, she stated that that she has lost her job and been the victim of identity theft. (*Id.*). While the Court is sympathetic to Respondent's financial difficulties, those assertions alone—without any evidence that would render the award clearly inappropriate—do not overcome the presumption that the award should be granted.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion for Attorney's Fees in the amount of **$67,647.75.** Further, The Court awards Plaintiff costs and fees in the amount of **$5,835.71**. Post-judgment interest shall accrue on the total amount awarded, **$73,483.46,** at the rate of **3.98%**, compounded annually, from the date this Order is entered until the amount awarded is paid in full.

SIGNED this 24 day of April, 2025.

Andrew S. Hanen
United States District Judge